By the Court, Masten., J.
The questions presented for our consideration by the prisoner’s exceptions are:
First. Was the insertion by the prisoner, under the circumstances stated in the bill, of the words “ Gen’l JR. JR. *131 Ticket office, Nov. 13, 1866, J. Graham,, Buffalo,” into the blank policy ticket, with intent to defraud, forgery within the statute?
Second. Is there a misnomer in the indictment of the corporation, which it is alleged the prisoner intended to defraud?
1. The statute enacts that “ every person who, with intent to injure or defraud, shall falsely make, alter, forge or counterfeit any instrument or writing, being or purporting to be the act of another, by which any pecuniary demand or obligation shall be, or shall purport to be created, increased, discharged or diminished, or by which any rights or property whatever shall be or purport to be transferred, conveyed, discharged, diminished, or in any manner affected, sháll be guilty of forgery.” (2 R. S., 673.)
Forgery may be committed under this statute either by entirely false making an instrument described by the statute, or by making a material alteration, erasure or insertion in, or addition to, a true instrument, although but in a letter or figure, or by misapplying a genuine signature as by writing over it in whole or in part an instrument for which it was never intended.
It is said in Bacon's Abridgment (title “Forgery." A), that “ the notion of forgery doth not so much consist in the counterfeiting of a man’s hand and seal, which may often be done innocently, but in the endeavoring to give appearance of truth to a mere deceit and falsity; and either to impose that upon the world as the solemn act of another which he is not privy to, or at least to make a man’s own act appear to have been done at a time when it was not done, and by force of such a falsity to give it an operation which in truth and justice it ought not to have.”
The putting into the policy ticket the words “ Nov. 13, 1866,” as its date, was the making of a material addition to the instrument. • By the terms of the instrument its date is made material, for it provides that “ This ticket will be *132 good for three days, commencing at 12, noon, on day of date.” The day written in the instrument as the day of its date raises the presumption, at least as between the parties to it, that such day is the true date of the instrument and of its delivery, and is therefore material.
. It is quite plain that the alteration of the date of a promissory note or of a bill of exchange, payable a certain length of time after date, would be an alteration of the terms thereof in a material particular. It would either hasten or protract the day of payment. It is well settled that the alteration, malo animo, of the date of such instrument is forgery. (Master v. Miller, 4 T. R., 320; affirmed on error, 2 H. Black R., 140; Powell v. Divett, 15 East R., 29; Hinfore v. Bromley, 6 East R., 309; Chitty on Bills, 204; U. S. Bank v. Russell, 3 Yeates, 391; Miller v. Gilleland, 19 Penn, R., 119; Byles on Bills, 253; Rex v. Atkinson, 7 C. & P., 669; 32 E. C. L., 679; Coke's 3 Institute, 169.)
I am of the opinion that the whole matter that the prisoner stamped into the blank ticket was material as giving the appearance to the ticket of having ■ been regularly issued, and of being of binding force.
But it is said the prisoner was at the time the agent of the insurance company, and that his offense was at most a fraudulent use of a contract fully executed and entrusted to him. His agency was to effect insurance on living persons against accidental loss of life or personal injury while traveling by public conveyance, and to that end to fill up the blank policy tickets entrusted to him. He had no authority to do what the jury have found he did do. He acted mala fide and beyond what he knew to be the scope of his authority. With intent to defraud his principal he stamped the policy ticket with a false date, and issued it, that it might be enforced as a policy upon a person who he knew had been accidentally killed while traveling by public conveyance.
*133 The case of R. v. Wilson (2 Carr & Kirwan [61 E. C. L.], 527), decided in 1847, was this: Mr. Nicholl gave to the prisoner, who was his clerk, a blank check on his bankers, with directions to ascertain the amount and expenses thereon of a certain bill for which Mr. Ificholl was bound; to fill up the check with that amount, get the money from the bank and take up the bill. The amount of the bill and expenses thereon was £156. The prisoner filled up the check for £250, obtained that amount thereon from the bank, and retained it for salary, which he claimed to be due to ' him from his employer, and immediately gave notice by letter to his employer of what he had done. The prisoner was convicted of forgery. The fifteen judges sustained the conviction, and held that it was clearly forgery, even if the prisoner believed that £250 were due to him, or even if it were really due to him.
- In R. v. Hart (7 Carr & P. [32 E. C. L.], 672), decided in 1836, it was held that if a person having the blank acceptance of another, be authorized to write on it a bill ■ of exchange for a certain limited amount, and write on it a bill of exchange for a larger amount, with intent to defraud, it is forgery.
In R. v. Bateman (1 Cox’s Criminal Cases, 186), it was ruled that if a person to whom a blank check is delivered fill it up with a different amount, or for a different purpose than that which • his authority warranted, or if, after the authority is at an end, he fill it up with any amount, with intent to defraud, it is clearly forgery. (Vanduzer v. Howe, 21 N. Y. R., 531.)
2. Misnomer. “ The name of incorporation,” says Sir Edward Coke, “is a proper name, or name of baptism; and, therefore, when a private founder gives his college or hospital a name, he does it only as a god-father, and by that same name the King baptizes the corporation.”
It is said in Angel <& Ames on Corporations {page 77"), *134 upon authority, that though the name of a corporate body is compared to the Christian name of a natural person, yet the comparison is not in all. respects perfectly correct. A Christian name consists in general but of a single word in which the alteration or omission of a single letter may make a material alteration in the name.
The name of a corporation frequently consists of several descriptive words, and the transposition of them, or an interpolation or omission of some of them may make no essential difference in their sense.
The first count of the indictment does not aver the corporate name of the insurance company to be “The Traveler’s Insurance Company, of Hartford, Connecticut.” It avers that the instrument purported to be the act of another, to wit: of “The Traveler’s Insurance Company, of Hartford, Connecticut,” and that the intent was to defraud “The Traveler^ Insurance Company, of Hartford, Connecticut, which was then and there a corporation duly organized,” &c.
It describes the artificial person whose act it purported to be, and whom it was intended to defraud by its corporate name, with the addition of the place in which it is created. To describe a natural person by his full name, with the addition of his place of residence, would certainly be unobjectionable.
To aver that the instrument purported to be the act of and was made with the intent to defraud John Doe, of Hartford, Connecticut, would lead to no embarrassment, or be the ground of any reasonable objection. I am unable to see any reasonable ground of objection to thus describing an artificial person.
I am of the opinion that none of the exceptions are well taken.
I have thus far considered the case under the first count.
In the third count, which charges the prisoner with having uttered, &c., the corporation is described by its *135 corporate name, without the addition of the name of the place at which it is created. It is not claimed that there is a misnomer of the corporation in that count. I think the delivery of the policy tickets by the prisoner to Warner, at the city of Buffalo, was an uttering at that place within the statute. It does not appear that it was objected upon the trial that it was not.
But I do not deem it necessary to decide whether the delivery to Warner, at Buffalo, was an uttering, for I am clearly of the opinion that the conviction must be sus- . tained if the first count were the only count in the indictment. Conviction affirmed.